IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TYRONE L. SMITH,
    Plaintiff,

vs.                                Case No.:  3:14cv173/LAC/EMT

OFFICER PRATT, OFFICER BURKE,
and LIEUTENANT BIRD,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Tyrone L. Smith ("Smith"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. Smith sues three FDOC correctional officers, Officer Pratt, Officer Burke, and Lieutenant Bird, claiming that they violated his constitutional rights by depriving him of food and spraying him with chemical agents during the period April 4, 2013 to June 26, 2013 (*see* ECF No. 36). Presently before the court is Defendants' Motion to Dismiss for failure to exhaust available administrative remedies (ECF No. 46). Smith responded in opposition to the motion (ECF No. 50).

I.    BACKGROUND and INTRODUCTION

    In the Fourth Amended Complaint (ECF No. 36), which is the operative pleading, Smith alleges that he was transferred from Tomoka Correctional Institution to Santa Rosa Correctional Institution ("SRCI") on or about April 4, 2013 (ECF No. 36 at 9).[1] He alleges while he was housed in Wing Three of E-dormitory on Close Management II status, a sergeant told him that a sergeant from Tomoka C.I. informed him that Petitioner was a "writ writer," meaning, he filed administrative grievances (*id.* at 9–10). Smith alleges the next day, Officer Pratt did not give him breakfast (*id.*).

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

He alleges other officers then stopped feeding him breakfast (*id.*). Smith alleges his custody status changed to Close Management I, and he was moved to a different wing of the same dormitory (*id.* at 10). He alleges Officer Pratt and Officer Burke deprived him of breakfast on 56 out of 81 days (*id.* at 10–11). Smith alleges that in response to not receiving breakfast, he would yell for officers to feed him (*id.* at 11). He alleges that Lieutenant Bird would then come to his cell, and when Smith explained that the officers were not feeding him, Bird would spray him with chemical agents (*id.*). Smith alleges Lieutenant Bird would often appear at his cell door and say, "You know what time it is," and then thirty minutes later, an officer would open the food flap of his cell and spray chemical agents for no reason (*id.* at 11–12). Smith alleges Lieutenant Bird sprayed him regularly despite his well documented history of eye problems and orders from his eye doctor that prohibited the use of chemical agents on Smith due to his diagnosed condition of glaucoma and cataracts (*id.* at 11–12). Smith alleges that he is now blind in his left eye, and can see only shadows in his right eye (*id.*). Smith alleges the officers deprived him of breakfast and sprayed him with chemical agents because he filed grievances (*id.* at 9, 12). He alleges their conduct was discriminatory because they singled him out as a "writ writer" and treated him differently than similarly situated inmates (*id.* at 12).

Smith claims that Officers Pratt and Burke's denying him breakfast because he was a "writ writer" constituted discrimination under the Fourteenth Amendment (ECF No. 36 at 12–13). He claims that Lieutenant Bird's spraying him with chemicals agents, or directing his subordinates to do so, constituted excessive force and deliberate indifference to his medical condition, in violation of the Eighth Amendment (*id.*). Smith seeks compensatory damages in the amount of $30,000,000.00 for physical and mental injuries he suffered as a result of Defendants' conduct (*id.*).

Defendants request dismissal of this action because Smith failed to properly exhaust his administrative remedies, which is a precondition to this lawsuit, pursuant to 42 U.S.C. § 1997e(a) (ECF No. 46). As explained below, the court concludes that Smith failed to exhaust his available administrative remedies with respect to the claims raised in his § 1983 complaint. Therefore, Defendants' motion to dismiss should be granted.

II.     EXHAUSTION

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "'[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'" Bryant v. Rich, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (quoting Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005)). The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the grievance process. Woodford v. Ngo, 548 U.S. 81, 95, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (quoting Woodford, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.*

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Turner, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to

resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing Jones, 549 U.S. 199); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

In Florida, generally, a prisoner must: (1) file an informal grievance with a designated prison staff member on Form DC6-236; (2) file a formal grievance with the institution's warden on Form DC1-303; and then (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See* Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code rr. 33–103.005–103.007).

Informal grievances must be received by the reviewing staff member "within a reasonable time" of when the incident or action being grieved occurred. *See* Fla. Admin. Code r. 33-103.011(1)(a). "Reasonableness" is determined on a case-by-case basis. *See id.* The reviewing staff member must provide the inmate with a written response to the informal grievance within 10 days. *See id.*, 33-103.011(3)(a); *see also* 33-103.005(4)(a). A written response is required due to the fact that if the inmate desires to pursue his grievance at the next level, he is required to attach a copy of his informal grievance and response. *See id.*, 33-103.005(4)(a). Unless the inmate has agreed in writing to an extension of the time limit for responding to grievances and appeals, expiration of a time limit at any step in the process entitles the inmate to proceed to the next step of the grievance process. *See* Fla. Admin. Code r. 33-103.011(4).

A formal grievance must be received by the warden, assistant warden, or deputy warden no later than 15 calendar days from (1) the date of the response to the informal grievance, or (2) the date on which the incident or action being grieved occurred, if the grievance is a direct formal grievance.[2] *See* Fla. Admin. Code r. 33-103.011(1)(b). An extension of time must be granted when

---

[2] An inmate may bypass the informal grievance step and file a direct formal grievance if the grievance is of a certain nature, for example, a grievance of reprisal or a medical grievance. *See* Fla. Admin. Code r. 33-103.006(3). Additionally, an inmate may file certain grievances directly with the Central Office, for example, a grievance of reprisal or a request for protective management. *See id.*, r. 33-103.007(6)(a).

Case No.: 3:14cv173/LAC/EMT

the inmate clearly demonstrates that it was not feasible to file the grievance within the relevant time period and that the inmate made a good faith effort to file in a timely manner.  *See id.*, r. 33-103.011(2).  If the formal grievance is not a direct grievance, the inmate must attach to his formal grievance a copy of the informal grievance and the response to the informal grievance.  *See id.*, 33-103.006(1)(g).  The warden, assistant warden, or deputy warden must respond to the grievance within 20 calendar days following receipt of the grievance.  *See id.*, 33-103.011(3)(b).

Grievance appeals to the Central Office must be received within 15 calendar days from the date of the response to the formal grievance.  *See* Fla. Admin. Code r. 33-103.011(1)(c).  If the grievance is a direct grievance, it must be received within 15 days from the date on which the incident or action which is the subject of the grievance occurred.  *See* Fla. Admin. Code r. 33-103.011(1)(d).  An extension of time must be granted when the inmate clearly demonstrates that it was not feasible to file the grievance within the relevant time period and that the inmate made a good faith effort to file in a timely manner.  *See id.*, r. 33-103.011(2). The Central Office must respond to the grievance appeal within 30 calendar days form the date of receipt of the grievance.  *See id.*, r. 33-103.011(3)(c).

A grievance (i.e., an informal grievance, formal grievance, or grievance appeal) may be returned to the inmate without further processing if, following a review of the grievance, the grievance addresses more than one issue or complaint.  *See* Fla. Admin. Code r. 33-103.014(1)(a). An inmate who has a grievance returned to him for this reason may correct the deficiency and re-file if the refiling is within the time frames allowable.  *See id.*, r. 33-103.014(2).  When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order to receive administrative review of his complaint he must correct the defects and resubmit the grievance within the time frames set forth in Rule 33-103.011, unless instructed otherwise in the grievance response.  *See id.*

III.   ANALYSIS

Defendants assert that Smith filed only one institutional grievance regarding the claims at issue in this case, informal grievance, #13-3889 (ECF No. 46 at 4).  Defendants submitted a copy of that informal grievance (*see* ECF No. 46-1, Declaration of Ashley Davis, ¶ 4, Ex. 2).  Defendants assert that the institution's response to the grievance, dated June 27, 2013, informed Smith that his

grievance was returned without processing because it addressed more than one issue or complaint (*id.*).  Defendants contend this lone institutional grievance was thus non-compliant with the FDOC grievance procedure (ECF No. 46 at 4).  Defendants additionally state that Smith did not file an appeal to the Central Office regarding the claims at issue in this case (*id.* at 5).  In support of this assertion, Defendants submitted copies of all appeals Smith submitted to the Central Office from April 2, 2013, to the date he commenced this civil rights action (ECF No. 46-2, Declaration of Shirley A. Johnson, Ex. 1).  Defendants contend Smith failed to properly exhaust the administrative remedies that were available to him, and thus failed to comply with the exhaustion requirement of 42 U.S.C. § 1997e(a) (ECF No. 46 at 5).

Smith argues that his June 23, 2013 informal grievance was a reasonable attempt to exhaust his administrative remedies (ECF No. 50 at 2).  Smith disputes that the informal grievance was returned to him (*id.*).  He states he was transferred from SRCI to another FDOC facility, the Reception and Medical Center ("RMC"), on June 26, 2013; therefore, it was impossible for him to have received the June 27, 2013 response (*id.*).  Smith further states that when he was transferred from SRCI, the institution did not transfer his property with him (*see* ECF No. 50 at 2, Ex. 2(B)).  He states that even though he was transferred back to SRCI, apparently on November 4, 2013, his property was not returned to him until January of 2014, and even then, the returned property included only the property he had acquired <u>after</u> his transfer from SRCI on June 26, 2013 (*see id.*).  Smith states he filed a grievance with the Central Office on January 12, 2014, concerning the loss of his property (ECF No. 50 at 2, Ex. 2(B)).[3]

It is undisputed that Smith filed informal grievance #13-3889 on June 23, 2013, that this was the only grievance he filed concerning the conduct at issue in this case, and that an official at SRCI responded to grievance #13-3889.[4]  It is also undisputed that the response stated:

---

[3] In the January 12, 2014 grievance, Smith complained that he had written informal and formal grievances concerning his lost property, but had not received responses to his grievances (ECF No. 50, Ex. 2(B)).  He stated that some of his property was returned to him on January 10, 2014, but it was only the property he had acquired at RMC and thereafter (*id.*).  He stated that none of his pre-RMC property (including legal work and miscellaneous papers) had been returned to him (*id.*).

[4] A "response" is defined as "[t]he information provided to the inmate relative to the decision to approve, deny, or return the grievance and the reasons for the approval, denial, or return."  Fla. Admin. Code r. 33-103.002(16).

Case No.: 3:14cv173/LAC/EMT

YOUR GRIEVANCE HAS BEEN RECEIVED, REVIEWED, AND EVALUATED.

ACCORDING TO CHAPTER 33-103.014(1)(A), REASONS FOR RETURN OF GRIEVANCE. THE GRIEVANCE ADDRESSES MORE THAN ONE ISSUE OR COMPLAINT.

THEREFORE, THIS GRIEVANCE IS BEING <u>RETURNED</u> TO YOU WITHOUT FURTHER PROCESSING.

(ECF No. 50, Ex. 2(B)).

Accepting as true Smith's assertion that he never received the response to informal grievance #13-3889, the undersigned concludes that this did not prevent him from proceeding to the next level of the grievance process by filing a formal grievance, so long as he clearly indicated this fact in his formal grievance.  The fact that he did not receive the response is equivalent to expiration of the response deadline.  According to the grievance procedures, Smith was entitled to proceed to the next step in the process so long as he clearly indicated that he had not received a response to his informal grievance.  *See* Fla. Admin. Code rr. 33-103.011(4) (expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process; if this occurs, the inmate must clearly indicate this fact when filing at the next step).[5]  *See* <u>Turner</u>, 541 F.3d at 1084 (rejecting prisoner's argument that warden's failure to respond to a formal grievance necessarily relieved him of his obligation to appeal, because prison grievance procedure gave instructions about what to do in that circumstance, and prisoner did not follow those instructions).

Further, Smith could have pursued a formal grievance despite the fact that he was transferred from SRCI.  The FDOC's grievance policy provides that formal grievances must be filed at the institution or facility to which the inmate is presently assigned, meaning, the institution or facility in which the inmate is housed at the time he files the grievance.  *See* Fla. Admin. Code r. 33-103.015(4).  The policy further provides:

---

[5] The difference between Georgia's prison grievance procedures and Florida's prison grievance procedures distinguishes the instant case from <u>Whatley v. Warden, Ware State Prison</u>, — F.3d —, 2015 WL 5568465 (11th Cir. Sept. 23, 2015).  In <u>Whatley</u>, the Eleventh Circuit concluded that the prison's failure to respond to the inmate's informal grievance prevented him from filing a formal grievance because, although the grievance procedures provided instructions for a prisoner who received no response to a <u>formal</u> grievance, it did not provide any guidance to a prisoner, like Whatley, who received no response to an <u>informal</u> grievance.  *See* 2015 WL 5568465, at *5 & n.2.

> [w]hen either the informal or formal grievance complaint concerns an informal or formal grievance that occurred at another location, it shall remain the responsibility of the staff at the inmate's present location to handle the informal or formal grievance. The final resolution of the informal or formal grievance is the responsibility of the warden at the institution to which the inmate is presently assigned. Direct contact with outside staff may be necessary in resolving the informal or formal grievance.

*See id.*

Smith does not dispute Defendants' assertion that he did not file any grievance regarding the claims raised in his § 1983 complaint, except informal grievance #13-3889. His not receiving a response upon expiration of the response deadline entitled him to proceed to the next step by filing a formal grievance at his present institution. Smith did not do so. Therefore, the undersigned concludes that Defendants have carried their burden of establishing that Smith failed to exhaust his available administrative remedies with respect to the claims raised in his § 1983 complaint. Accordingly, Defendants' motion to dismiss should be granted.

Based upon the foregoing, it is respectfully **RECOMMENDED**:

1. That Defendants' motion to dismiss (ECF No. 46) be **GRANTED**;

2. That this action be **DISMISSED WITHOUT PREJUDICE** for Plaintiff's failure to properly exhaust administrative remedies as required under 42 U.S.C. § 1997e(a); and

3. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 6<u>th</u> day of October 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**